UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CHUNWEI ZHOU,

               Petitioner,

          v.

JAMES JANEC[K]A, et al.,

               Respondents.

Case No. 5:26-cv-04167-DTB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**I.**

**PROCEEDINGS**

On July 24, 2026, petitioner Chunwei Zhou ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by the supporting Affidavit of Petitioner ("Petitioner's Decl.") (Docket No. 1-4), and three supporting exhibits (Docket Nos. 1-1 through 1-3).

///

///

///

1

The Petition alleges the following claims for habeas relief: (1) Petitioner's detention violates her right to procedural due process under the Fifth Amendment; (2) the denial of bond for Petitioner violates her right to due process under the Fifth Amendment; and (3) Petitioner's detention violates her right to substantive due process under the Fifth Amendment. (Docket No. 1 at 18-19).[1]

On August 3, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5 at 2, 5), Respondents filed an Answer to the Petition ("Answer"). (Docket No. 8).

On August 4, 2026, Petitioner filed a Reply. (Docket No. 9).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[2]

Petitioner is a native and citizen of the People's Republic of China. (Petition at ¶¶ 1, 17). On July 17, 2024, Petitioner entered the United States lawfully near San Francisco, California, on a valid B-2 visitor visa, after inspection and admission by an immigration officer. (Id. at ¶ 25).

On December 31, 2024, Petitioner filed an Immigrant Petition by Alien Investor (Form I-526) and an Application to Register Permanent Residence or Adjust Status (Form I-485) with United States Citizenship and Immigration Services ("USCIS"). (Id. at ¶ 26). On January 2, 2025, Petitioner filed an Application to Extend/Change Nonimmigrant Status (Form I-539), which USCIS approved on June 27, 2025, thereby allowing her to remain lawfully in the United States for an

---

[1]    For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2]    The Background is based on the allegations in the Petition.

extended period of time.[3]  (Id.; Docket No. 8, Exh. A at 4).  On May 20, 2025, Petitioner married Richard Huang, a United States citizen, and thereafter filed a second Form I-485 to adjust status based on her marriage.  (Id.).  On July 3, 2025, her United States-citizen husband filed a Petition for Alien Relative (Form I-130) on her behalf.  (Petition at ¶ 26).  Her Forms I-526, I-485, and I-130 all remain pending.  (Id.).  Since her marriage, Petitioner and her husband have lived together at 6043 Rowland Avenue, Temple City, California 91780.  (Id.; Petitioner's Decl. at ¶ 4).

Throughout her time in the United States, Petitioner has taken affirmative steps to comply with the law and to pursue lawful status.  (Petition at ¶ 27).  Petitioner retained counsel, filed and prosecuted her applications, and appeared for every scheduled appointment and interview.  (Id.; Petitioner's Decl. at ¶ 7).

Petitioner is currently in removal proceedings.  (Petition at ¶ 28).  The sole charge in her Notice to Appear (Form I-862) is that she is a nonimmigrant who remained longer than permitted, in violation of INA § 237(a)(1)(B).  (Id.).  She has no criminal conviction of any kind in the United States, and the Department of Homeland Security's ("DHS") own records reflect a "NEGATIVE" immigration and criminal history.  (Id.).

On January 10, 2025, a local governmental entity within the People's Republic of China, the Binzhou Municipal Public Security Bureau, Economic and Technological Development Zone Branch, issued a one-page arrest warrant for Petitioner under case number A3716401400002024085001, charging her with the offense of "illegally absorbing public deposits."  (Id. at ¶ 29).  The warrant consists of a single page on a bare, conclusory form, and it provides no evidence of

---

[3]   Petitioner's Form I-213, filed by Respondents,, states, at page 3, that Petitioner's Form I-539 was approved on June 27, 2025, authorizing Petitioner to remain in the United States for a period not to exceed April 16, 2025.  (Docket No. 8, Exhibit ["Exh."] A).

3

wrongdoing, identifies no complaining witness, and attaches no trial record or victim statement. (Id.).

On February 24, 2026, at the request of the People's Republic of China, INTERPOL published a Red Notice for Petitioner under case number A-3137/2-2026, charging the same offense. (Id. at ¶ 30).

Petitioner maintains that the criminal accusation against her raised in the Red Notice is false. (Id. at ¶ 31). Petitioner's former husband, An Zhibin—himself a Chinese national now seeking political asylum in the United States—has provided a sworn declaration, under penalty of perjury, stating that since approximately 2017, Petitioner has been engaged solely in charitable and public-welfare work through the Shandong Zhongtou Charity Foundation; that she has never participated in the management or operation of any for-profit enterprise; and that she has never engaged in any finance, fundraising, investment, wealth-management, lending, or deposit taking activity in China. (Id.). An Zhibin attests that the charge of "illegally absorbing public deposits" is therefore baseless. (Id., citing the Declaration of An Zhibin ["Zhibin Decl."]; Docket No. 1-1).

In his declaration, An Zhibin states that the true origin of the charge against Petitioner is political reprisal. (Petition at ¶ 32). After he refused, in 2024, to allow the Binzhou City government to establish a Chinese Communist Party branch inside his company, the government retaliated against him and escalated its actions against those connected to him—including his nephew, his uncle, and Petitioner, his former wife. (Id.). Since arriving in the United States, An Zhibin has received threatening and extortionate calls, has had his vehicle vandalized and set on fire, and has received threatening items containing bullets, all of which he reported to United States police. (Id., citing Zhibin Decl.).

/ / /

/ / /

Petitioner alleges that she is a philanthropist, and that this fact is supported by the public record. (Petition at ¶ 33). She founded the Shandong Zhongtou Charity Foundation in 2017, funded the construction of Hope Primary Schools, and led the "My City New Mother" project supporting more than 800 orphaned and impoverished children; in gratitude for a road she rebuilt, villagers named it "Chunwei Road." (Id.). Her charitable work is documented in Chinese and foreign media. (Id., citing Zhibin Decl.).

The Red Notice and foreign warrant—rather than any United States criminal charge or judicial warrant—were the operative reasons Respondents targeted Petitioner for a fugitive-unit arrest and the operative reasons the Immigration Judge later denied her bond. (Petition at ¶ 34).

On July 6, 2026, Petitioner appeared, as instructed, at the USCIS office located at 300 North Los Angeles Street, Los Angeles, California, for a scheduled interview on her own pending application. (Id. at ¶ 35). USCIS confirmed that she checked in with security at approximately 10:00 a.m. and escorted her to an interview room. (Id.). After the interview concluded at approximately 12:40 p.m., Immigration and Customs Enforcement ("ICE") Foreign Fugitive Unit officers entered the interview room, identified themselves as ICE officers, and arrested her. (Id.). They transferred her to the Adelanto ICE Processing Center, where she has remained detained ever since. (Id.; Petitioner's Decl. at ¶¶ 7-8).

Prior to her arrest and detention, Petitioner received no notice, written or oral, that her liberty was at risk. (Petition at ¶ 36). She was given no opportunity to be heard before she was taken into custody, no opportunity to present evidence that she is neither a danger nor a flight risk, and no decision by any neutral adjudicator before her detention. (Id.). Respondents did not adjudicate, revoke, or terminate her ongoing pursuit of lawful status before detaining her. (Id.; Petitioner's Decl. at ¶ 6).

/ / /

Petitioner asserts that there was no emergency and no impracticability that would warrant her arrest and detention.  (Petition at ¶ 37).  Respondents controlled the time and place of Petitioner's appearance; USCIS had scheduled the interview and Petitioner appeared as directed.  (Id.).  Respondents had every opportunity to provide notice and a hearing before depriving her of her liberty.  (Id.).

On July 24, 2026, Petitioner appeared with counsel before Immigration Judge Steven Marcus for a bond hearing under 8 U.S.C. § 1226(a).  (Id. at ¶ 38).  In support of release, she submitted extensive evidence that she is neither a danger nor a flight risk and that the foreign charge is false and politically motivated, including An Zhibin's sworn declaration, her marriage certificate, and documentation of her philanthropy.  (Id.).  The Immigration Judge nonetheless denied bond, relying on the INTERPOL Red Notice and the Chinese warrant to treat Petitioner as a fugitive. (Id.).

Since her detention, Petitioner has suffered significant emotional and physical hardship and is separated from her husband, her home, and her community.  (Id. at ¶ 39).

### III.

### LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been

6

strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth

in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

**IV.**

**DISCUSSION[4]**

**A.      Petitioner is Entitled to Habeas Relief.**

Petitioner claims that her arrest and detention on July 6, 2026, without any pre-deprivation notice or hearing, constituted a violation of due process.  (See Petition at 18; id. at ¶¶ 35, 42-45).  Specifically, Petitioner alleges that she has lived openly in the United States since she lawfully arrived in 2024, that she has pursued lawful immigration status pursuant to the governing laws and under the instruction of the government seeking to adjust her immigration status since her arrival,  During

---

[4]      As an initial matter, the Court rejects Respondents' contention in the Answer that Petitioner must first exhaust her remedies with the Board of Immigration Appeals ("BIA") (see Docket No. 8 at 6-7).  Constitutional claims are generally excepted from the exhaustion requirement because neither immigration judges nor the BIA are permitted to consider constitutional challenges to the statutes they administer.  Sola v. Holder, 720 F.3d 1134, 1135 (9th Cir. 2013).

the pendency of her applications, the government has permitted her to remain free and at liberty while exercising authority over her applications for immigration relief. (Petition at ¶¶ 1-2, 26-27).  Indeed, the government approved Petitioner's Form I-539 to extend/change her nonimmigrant status on June 27, 2025.  (Docket No. 8, Exh. A at 3).  Petitioner argues that the government was well aware of her presence in the United States as a result of her applications for immigration relief, but that the government elected not to seek her detention or to otherwise impede her liberty, thereby granting her a liberty interest.  (Petition at ¶¶ 2, 44).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."  Zadvydas, 533 U.S. at 690.  The protection afforded by the Due Process Clause runs to citizens and noncitizens alike.  J. G. G., 604 U.S. at 673 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").  Evaluating the contours of Petitioner's due process rights proceeds in two steps:  "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, No. 2:25-cv-01884- TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

Here, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her applications for immigration relief.  Indeed, a number of federal courts in California have found a protectable liberty interest in nearly identical circumstances.

See; Tzoc v. LaRose, Case No. 26-cv-3965-GPC-VET, 2026 WL 2227161, at *2-3 (S.D. Cal., Aug. 3, 2026); Dai v. Janecha, Case No. 5:26-cv-03966-PD, 2026 WL 2164154, at *1-2 (C.D. Cal., July 24, 2026); E.E.O.H. v. Noem, Case No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363, at *4-5 (E.D. Cal. Mar. 26, 2026), report and recommendation adopted, 2026 WL 967670 (E.D. Cal. Apr. 9, 2026); Villanueva-Montanez v. Lyons, Case No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026); Kalkan v. Chestnut, Case No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026); Kharitonova v. Albarran, Case No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026).

As demonstrated in the cases cited above, Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them.  See also Gagik T. v. Chestnut, et al, Case No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal., June 25, 2026) (granting release to a noncitizen who entered the country on a visitor visa, applied for asylum, was granted employment authorization and remained out of custody for six years); Kharitonova, 2026 WL 531441 at *2 ("Although the Government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual who was initially detained.").

The Court finds the reasoning of these cases persuasive.  Petitioner entered the United States lawfully, pursuant to a visitor's visa, and thereafter proceeded through the established lawful process to apply to the government for three separate types of relief to adjust her immigration status.  (Petition at ¶¶ 25-27).  During the more than two years that Petitioner has been present in the country, the government accepted and processed her applications, even approving one of them.  (Id. at ¶ 26; Docket No. 8, Exh. A at 3).  Petitioner complied with every request made of her by

the government during the application process. (Petition at ¶ 27). During this time, Petitioner married, and her husband also filed an application with the government on her behalf. (Id. at ¶ 26). Petitioner and her husband have resided at the same address in Temple City since her marriage on May 20, 2025. (Id.). Thus, Respondents have had full knowledge of Petitioner's identity, immigration status and location during the pendency of her immigration applications, or since December 2024. With this knowledge, the government has continuously elected not to detain Petitioner while exercising authority over her legal proceedings, all the while permitting her to remain free and at liberty while her applications were pending.

Considering the arc of the government's sustained conduct towards Petitioner, the Court finds that Petitioner developed a substantial liberty interest in continued release.

In light of this protected liberty interest, the Court turns to consider what process she is owed before the government may take that liberty interest away. Petitioner claims that due process was required before she was taken into custody. (Petition at ¶ 45). She thus argues that the appropriate habeas remedy is for her to be released back to the community. (Id. at ¶¶ 53-54). The Court agrees.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three factors set forth in Mathews:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest
> through the procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards; and finally, the
> Government's interest, including the function involved and the
> fiscal and administrative burdens that the additional or substitute
> procedural requirement would entail.

424 U.S. at 335.

11

As discussed below, the Court finds that each of the three Mathews factors supports Petitioner's constitutional right to process before she was re-detained.

With regard to the first factor, as discussed above, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in the community with her husband and pursuing her applications for immigration relief. See Ortega, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that the petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second Mathews factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide her with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)) And where a petitioner has not received a hearing or other process prior to the revocation of her liberty, "the risk of an erroneous deprivation [of liberty] is high." Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Finally, Respondents have not articulated any countervailing government interest—the third Mathews factor—that supports providing this process only after Petitioner has been detained. Due process "usually" requires a hearing before the State deprives a person of liberty or property. Zinermon, 494 U.S. at, 127. Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. Id. at 128. But neither of those exceptions appears to be applicable to the instant circumstances. Respondents have not argued that Petitioner was an imminent risk of flight or that

some other exigency required her immediate arrest and detention when she appeared for her scheduled appointment with USCIS on July 6, 2026.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." Ortega, 415 F. Supp. 3d at 970; see also Morrissey, 408 U.S. at 483 (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the Mathews factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

To the extent Respondents in the Answer argue that Petitioner's subsequent bond hearing has inoculated the harm from any violation of Petitioner's right to due process (Docket No. 8 at 2-3), the Court disagrees.

Many courts considering this issue have found that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner "will have already suffered the harm" that such petitions raise—her potentially erroneous detention. See, e.g., Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14 2025); Hasratyan v. Bondi, Case No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); Saballos Rosales v. Noem, Case No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention

13

process she was owed.") (citing <u>Hasratyan</u>); <u>Charan S. v. Warden, CA City</u>, Case No. 1:26-cv-3017, TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"); <u>see</u> <u>also</u> <u>Riveros-Sanchez v. City of Easton</u>, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

As with similar cases in this Circuit, the Court finds that the appropriate remedy in this case is to order Petitioner placed in the position she would have been absent the due process violation—that is, she should be released from custody on the conditions that were initially imposed.  <u>See</u>, e.g., <u>E.A.T.-B. v. Wamsley</u>, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); <u>Jasbin v. Warden</u>, Case No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that the petitioner was only entitled to bond hearing as a <u>Maldonado Bautista</u> class member); <u>Prior v. Chestnut</u>, Case No. 1:25-cv-01131-JLTEPG-HC, 2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

## V.

## ORDER

Accordingly, Petitioner's claim that her right to due process was violated by the lack of notice and hearing prior to her arrest and detention (Petition at 18; <u>id.</u> at ¶¶ 42-45) is granted.  Petitioner Chunwei Zhou (A# 235-522-191) is ordered immediately released on the conditions to which she was previously subjected.  Any property confiscated during her arrest shall be returned to her.  The remaining claims in the Petition are denied as moot in light of the relief granted on this clam.

14

Petitioner's counsel shall file a status report confirming Petitioner's release within three days of her release from custody; if release is delayed for any reason, Petitioner shall promptly notify the Court. Upon receipt of confirmation that Petitioner has been released, judgment will issue and the Court will close the case.

If Petitioner's counsel seeks EAJA fees, counsel shall file a timely motion with supporting documentation.

DATED: August 14, 2026

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE